UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
LYNDA MARTIN,

                            Plaintiff,

-against-

NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK),

                            Defendant.
----------------------------------------------------------------x

**MEMORANDUM & ORDER**

12-CV-05884 (SLT)(VVP)

**TOWNES, United States District Judge:**

*Pro se* Plaintiff Lynda Martin ("Martin") filed this action in New York Supreme Court in fall 2012, and Defendant National Railroad Passenger Corporation ("Amtrak") promptly removed this action to this Court. (ECF No. 1.) This case arises from injuries Martin alleges she suffered as a result of Amtrak's negligence while Martin waited for a train at New York Pennsylvania Station ("Penn Station"). On July 15, 2014, Amtrak moved this Court for summary judgment. (ECF No. 36.) For the reasons set forth below, Amtrak's motion is granted.

## I. LEGAL STANDARD

Courts may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court's role is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "Because the Court's role is limited in this respect, it may not make factual findings, determine credibility of witnesses, or weigh evidence." *Douglas v. City of New York*, 595 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (citations omitted). Rather, in determining whether there is a genuine issue of material fact, a court resolves all ambiguities and

draws all justifiable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255. A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

A court faced with an unopposed motion for summary judgment "must determine whether the legal theory of the motion is sound" and "ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production." *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014). Because Martin proceeds *pro se*, the Court must read her pleadings liberally and interpret them "to raise the strongest arguments that they suggest." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citation and internal quotation marks omitted).

## II. BACKGROUND

### A. Facts[1]

*Events at Penn Station*

On October 2, 2011, Martin sprained her knee while visiting a friend in Queens, New York. (Def.'s Local Rule 56.1 Statement of Material Facts ("Def.'s 56.1 Stmt.") ¶ 9, ECF No. 39.) An ambulance took Martin to Jamaica Hospital where she received crutches and a leg immobilizer. (*Id.*) The next day, Martin reserved a ticket on an Amtrak train scheduled to leave at 11:45 a.m. on October 4, 2011, from Penn Station to Florida. (*Id.* ¶ 10.)

At 10:30 a.m. on October 4, Martin arrived at Penn Station with at least six suitcases. (*Id.*; Martin Dep. 36:2–5, ECF No. 37-2.) Martin then called Amtrak to seek assistance getting

---

[1] Unless indicated otherwise, the Court recites the facts below from Defendant's Local Civil Rule 56.1 Statement of Material Facts. Although Plaintiff filed no opposition to the instant summary judgment motion, the Court has reviewed Defendant's Rule 56.1 Statement to ensure that each statement of fact relied upon is properly supported by record evidence. *See Jackson*, 766 F.3d at 194 (noting that courts faced with unopposed summary judgment motions must ensure that statements of material fact are supported by record evidence).

from the sidewalk to her train. (Def.'s 56.1 Stmt. ¶ 12.) An Amtrak employee came to assist Martin at approximately 11:00 a.m. but told Martin that her bags were too heavy and that he could not assist her. (*Id.* ¶ 14.) Although Martin missed her train, she continued to wait on the sidewalk outside of Penn Station until another Amtrak employee approached her at approximately 5:30 p.m. (*Id.* ¶ 16; Martin Dep. 46:11–15.) The Amtrak employee seated Martin in a wheelchair and transported her and her luggage to the baggage claim area within Penn Station. (Def.'s 56.1 Stmt. ¶ 17; Martin Dep. 46:11–47:10.)

While Martin waited in the baggage claim area, an unidentified person called an EMT for Martin. (Def.'s 56.1 Stmt. ¶ 18.) EMTs transported Martin to Roosevelt Hospital where she received a larger leg immobilizer before being discharged. (*Id.* ¶ 20; Martin Dep. 54:16–55:5.) Records from Martin's hospital visit state that she suffered "no new injury" as a result of her experience at Penn Station. (Def.'s 56.1 Stmt. ¶ 21.) After her discharge from Roosevelt, and despite her knowledge that the next train to Florida did not leave until 11:45 a.m. the next morning, Martin returned to Penn Station and proceeded without assistance to the baggage claim area, at one point descending an escalator. (*Id.* ¶¶ 22–24; Martin Dep. 58:22–60:3.) An Amtrak employee gave Martin a wheelchair after she returned to the baggage claim area. (Martin Dep. 60:2–3.) Martin went to the waiting area and spent the night in a regular chair. (Martin Dep. 62:12–63:12.)

On the morning of October 5, 2011, an Amtrak employee helped Martin with her luggage, and Martin boarded a train to Florida. (Def.'s 56.1 Stmt. ¶¶ 25–26; Martin Dep. 69:12–14.) Before boarding the train, Amtrak employees weighed Martin's bags. (Def.'s 56.1 Stmt. ¶ 25; Martin Dep. 65:3–4.) Because some of her bags were overweight, Martin rearranged some of her bags and placed some items in boxes she purchased from Amtrak. (Martin Dep. 65:5–6,

66:19–67:6, 68:3–22.) Martin's luggage ultimately consisted of six bags and two boxes. (*Id.* 68:14–22.)

*Amtrak's baggage policy*

Amtrak's baggage policy "reserves the right to deny transport . . . for items exceeding policy limitations." (Def.'s 56.1 Stmt. ¶ 15.) Amtrak permits passengers to check two bags weighing a maximum of 50 pounds each. (*Id.*) Two additional bags may be checked for a fee of $20 per bag. (*Id.*) Passengers may also bring up to two carry-on bags, each weighing a maximum of 50 pounds. (*Id.*) Martin admits that two of her bags exceeded Amtrak's weight limitations. (*E.g.*, Martin Dep. 64:21–65:17.)

**B. Procedural History**

Martin originally filed this action in New York State Supreme court in November 2012. (*See* ECF No. 1.) Martin brings claims for negligence, abandonment, harassment, and fraud. (*Id.*) Martin's complaint can be liberally read also to include a claim under the Americans with Disabilities Act and a claim for intentional or negligent infliction of emotional distress. (*Id.*) Amtrak removed this case to this Court on November 28, 2012. (*Id.*) Amtrak filed a letter on January 28, 2014, seeking leave to move for summary judgment. (ECF No. 24.) This Court granted Amtrak's request and set a briefing schedule for the motion. (ECF No. 27.)

On May 28, 2014, Amtrak wrote the Court to note it had not received Martin's opposition, which was due on May 16, 2014. (*See* ECF No. 30.) In light of Martin's *pro se* status, this Court *sua sponte* granted her until June 27, 2014, to serve her opposition but stated that if Martin failed to meet this deadline the Court would consider Amtrak's motion unopposed. (ECF No. 35.) Martin served no opposition, and Amtrak filed the unopposed motion on July 15, 2014. (ECF No. 36.)

Nearly one month after Amtrak filed its motion, Martin wrote the Court stating she had just received this Court's Order granting her until June 27 to file her opposition and noting that she intended to file a motion to amend her complaint. (*See* ECF No. 40.) Martin never filed a motion to amend, and this Court again granted her an extension of time to file her opposition to Amtrak's motion. (*See* ECF No. 42.) The Order granting Martin this additional extension of time also informed Martin of the potential consequences if she failed to respond to Amtrak's motion for summary judgment. The deadline for Martin's opposition passed on January 9, 2015.

On January 16, 2015, the Court received a letter from Martin requesting an additional extension of time. (ECF No. 44.) Noting Martin's *pro se* status, this Court granted her a final extension of time. (ECF No. 46.) This final deadline has passed, and Martin has filed no opposition. The Court thus treats Amtrak's motion as unopposed.

### III. DISCUSSION

**A. Negligence**

Martin does not clearly articulate in her complaint or deposition how she believes Amtrak was negligent, but she appears to suggest that Amtrak's negligence stems from its failure to assist her with her luggage quickly enough to allow her to make her originally scheduled train on October 4, 2011. Amtrak argues that it owed Martin no duty to assist her with her excessive luggage. (Mem. Supp. 4–8, ECF No. 38.)

A negligence claim under New York law requires the plaintiff to establish: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Pasternack v. Lab. Corp. of Am.*, 892 F. Supp. 2d 540, 552 (S.D.N.Y. 2012) (internal quotation marks omitted) (citing *Farash v. Cont'l Airlines, Inc.*, 574 F.

Supp. 2d 356, 367 (S.D.N.Y. 2008)). "The existence of a duty is thus a *sine qua non* of a negligence claim: 'In the absence of a duty, as a matter of law, no liability can ensue.'" *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (per curiam) (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997)). The existence and scope of an alleged tortfeasor's duty "is, in the first instance, a legal issue for the court to resolve." *Id.* (citation and internal quotation marks omitted).

"Under New York law, a carrier of passengers is under a duty to exercise reasonable care for the safety and protection of its passengers."[2] *Klein v. Nat'l R.R. Passenger Corp.*, No. 87 CIV. 3176 (TPG), 1988 WL 108481, at *2 (S.D.N.Y. Oct. 7, 1988) (citing *McLean v. Triboro Coach Corp.*, 302 N.Y. 49 (N.Y. 1950)). However, "[g]enerally, there is no duty to come to the aid of another." *Stanton v. Manhattan E. Suite Hotels*, No. 01Civ.2394(LTS)(FM), 2002 WL 31641127, at *3 (S.D.N.Y. Nov. 22, 2002) (citing *Zalenko v. Gimbel Bros, Inc.*, 158 Misc. 904, 287 N.Y.S. 134 (Sup. Ct. 1935)). Nonetheless, one who voluntarily undertakes to assist another must act carefully, "not omitting to do what an ordinarily prudent person would do in accomplishing the task." *Van Hove v. Baker Commodities, Inc.*, 288 A.D.2d 927, 732 N.Y.S.2d 803, 804 (4th Dept. 2001) (citations and internal quotation marks omitted). The gratuitous actor may cease to act at any time, "unless, by giving the aid, he has put the other in a worse position than he was in before the actor attempted to aid him." Restatement (Second) of Torts § 323 cmt.

---

[2] Some New York cases from the early 20th century reference a limited duty to assist passengers with their luggage while boarding or disembarking from a train. *See Hasbrouck v. New York Cent. & H.R.R. Co.*, 202 N.Y. 363, 372, 95 N.E. 808 (1911); *Van Dike v. Pullman Co.*, 145 Misc. 452, 457, 261 N.Y.S. 292, 297 (City Ct. 1932). However, such a duty appears to have only reached so far as to require assistance with the actual transfer of luggage on and off the train from the platform. *See Hasbrouck*, 202 N.Y. at 372, 95 N.E. at 811 (recognizing duty, "under reasonable circumstances," to "help passengers *on and off* trains" with their luggage but recognizing that trainmen could refuse "if there were many applications, or [the trainman] was otherwise engaged" (emphasis added)); *Van Dike*, 145 Misc. at 457, 261 N.Y.S. at 297 ("A passenger, *about to board or alight from the train*, may reasonably expect assistance with his baggage from the employees of the train." (emphasis added)).

c (1965); *see also Suthers v. Amgen Inc.*, 441 F. Supp. 2d 478, 489 (S.D.N.Y. 2006) (relying, in part, upon comment c to Restatement (Second) Torts § 323 in applying New York law and finding that withdrawal of drug used in clinical trial did not give rise to negligence claim where the withdrawal left plaintiffs in the same position as before the trial).[3]

Here, Martin called Amtrak for assistance from the sidewalk outside Penn Station. Initially, Amtrak voluntarily agreed to assist Martin with transporting her and her bags to the train. However, upon seeing her bags, an Amtrak agent withdrew this offer of assistance. Amtrak's withdrawal of assistance came only 30 minutes after it first agreed to help Martin—45 minutes before her train was scheduled to depart—and did not put Martin in a worse position than she was in before Amtrak agreed to assist her. Amtrak thus did not violate any duty owed to Martin. *See, e.g.*, Restatement (Second) of Torts § 323 cmt. c (1965).

**B. Fraud**

A fraud claim under New York law has four elements: "(1) the defendant made a material false representation; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of such reliance." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 332 (S.D.N.Y. 2009) (citing *Banque Arabe et Internationale D'Investissement v. Md. Nat. Bank*, 57 F.3d 146, 153 (2d Cir. 1995)). "Each element of a fraud claim must be proved by clear and

---

[3] As the court in *Suthers* recognized, the New York Court of Appeals has cited comment c with approval, "though it would be an unwarranted stretch to say that it has been adopted wholesale as a definitive pronouncement of New York law." 441 F. Supp. 2d at 489 n.6. *See Heard v. City of New York*, 82 N.Y.2d 66, 73, 603 N.Y.S.2d 414, 623 N.E.2d 541 (1993) (citing comment c with approval); *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 523, 429 N.Y.S.2d 606, 407 N.E.2d 451 (1980) (same). *See also Zibbon v. Town of Cheektowaga*, 51 A.D.2d 448, 455, 382 N.Y.S.2d 152, 157 (4th Dept. 1976) (Simons, J., dissenting) (citing Restatement (Second) of Torts § 323 cmt. c and arguing that withdrawal of police protection, "standing alone, would not result in liability under the assumption of duty doctrine").

convincing evidence." *Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 222 (2d Cir. 2006) (citation omitted).

Here, Martin does not allege that Amtrak intended to defraud her. Neither does the record before the Court contain clear and convincing evidence as to the other three elements. Accordingly, this Court must grant summary judgment against Martin's fraud claim.

### C. Harassment and Abandonment

Martin also brings claims for "harassment" and "abandonment." (*See* Compl. 1, ECF No. 1.) However, "New York does not recognize a common-law cause of action for harassment." *Edelstein v. Farber*, 27 A.D.3d 202, 811 N.Y.S.2d 358 (1st Dept. 2006) (citation omitted). Meanwhile, abandonment claims typically arise in cases involving family law or property law. *See, e.g., Mehl v. Mehl*, 59 A.D.3d 402, 402, 874 N.Y.S.2d 156 (2d Dept. 2009) (family law); *Janoff v. Disick*, 66 A.D.3d 963, 965–66, 888 N.Y.S.2d 113 (2d Dept. 2009) (property law). Neither type of abandonment claim is at issue in this case. Rather, Martin's negligence claim covers the conduct she presumably complains of in her "abandonment" claim.

### D. Other Possible Claims

*Americans with Disabilities Act*

To the extent Martin's complaint asserts a claim under the Americans with Disabilities Act ("ADA"), this claim fails. Although Martin's complaint and deposition testimony reference her "disability," (*e.g.*, Compl. 1, ECF No. 1; Martin Dep. 110:20), the only possible basis for a disability that Martin raises is her sprained knee. Martin testified that she suffered the same injury two to three years earlier, but that injury occurred in her other knee. (*Compare* Martin Dep. 29:11–30:8, *with* Zisser Decl. Ex. G, ECF No. 37-3 (hospital records showing 2011 injury to Martin's left knee)). Martin also testified that she was able to travel from the street-level

sidewalk into Penn Station unassisted, even riding the escalator. (Martin Dep. 58:16–59:17.) Martin's knee injury does not qualify her as disabled under the ADA. *See Zuppardo v. Suffolk Cnty. Vanderbilt Museum*, 19 F. Supp. 2d 52, 54–56 (E.D.N.Y. 1998) (discussing analysis used to determine disability and finding that leg and back injuries that did not prevent plaintiff from "walk[ing] some distances" and were only "sporadically symptomatic" did not qualify plaintiff as disabled as a matter of law), *aff'd*, 173 F.3d 848 (2d Cir. 1999).

*Intentional or negligent infliction of emotional distress*

"Under New York law, the torts of intentional and negligent infliction of emotional distress share three common elements: (1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010) (citations omitted). "A claim based on intentional infliction of emotional distress also requires that the defendant intend to cause severe emotional distress." *Id.* New York courts tend to focus on the outrageousness element, the element "most susceptible to determination as a matter of law." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993) (citations omitted). The outrageousness standard is "difficult to satisfy." *Id.* at 122 (citations omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted).

Amtrak's alleged conduct in this case—not "perform[ing] up to [Martin's] expectations until a day late"—does not meet the high threshold required to satisfy the outrageousness element. *See Howell*, 81 N.Y.2d at 122. "Furthermore, under New York law, intentional infliction of emotional distress and negligent infliction of emotional distress are theories of

recovery that are to be invoked only where other tort remedies are not available." *Regeda v. City of New York*, No. 09-CV-5427 (KAM)(VVP), 2012 WL 7157703, at *13 (E.D.N.Y. Sept. 7, 2012) (citations omitted). Thus, to the extent Martin brings a claim for intentional or negligent infliction of emotional distress, this claim fails.

### IV. CONCLUSION

For the reasons set forth above, Amtrak's unopposed motion for summary judgment (ECF No. 36) is granted. The Clerk of Court is respectfully requested to close the case.

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: March 12, 2015
Brooklyn, New York